# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-------------------------------------------------------------X
YLL IRREVOCABLE TRUST and
KOCHAV S.AR.L.,

        Plaintiffs,

-against-

RABBI SHLOMO ZALMAN KAUFMAN,
RABBI ALEXANDER GRAUSZ,
RABBI MOISHE BERGMAN,
KOLEL BETH YECHIEL MECHIL OF
TARTIKOV, INC., and
WILMINGTON SAVINGS FUND SOCIETY, FSB,

        Defendants.
-------------------------------------------------------------X

Index No.

**AFFIRMATION**

STATE OF NEW YORK : COUNTY OF NEW YORK

        **STEPHEN R. STERN**, an attorney duly admitted to practice law before the Courts of the State of New York, affirms under penalty of perjury as follows:

        1. I am a partner in Hoffinger Stern & Ross, LLP, attorneys for plaintiffs YLL Irrevocable Trust ("YLL") and Kochav S.A.R.L. ("Kochav" and together with YLL sometimes referred to as the "Plaintiffs").

        2. This action concerns the conduct of an arbitration between the Plaintiffs and Kolel Beth Yechiel Mechil of Taritkov, Inc. ("Kolel") before a Rabbinical panel composed of the three individual named Rabbi defendants (the "Arbitration Panel"). For reasons which will be explained in more detail in the complaint, the underlying papers filed in this action and here, it has become apparent the conduct of the arbitration before the Arbitration Panel, headed by a purported "Neutral" Rabbi, to wit, Rabbi Shlomo Zalman Kaufman ("Rabbi Kaufman" or the "'Neutral Rabbi") has been tainted through the supposed 'Neutral' Rabbi's various connections and interaction with an intermediary connected with Kolel. Further and of great significance, the

1

'Neutral' Rabbi impermissibly "froze out" one panel member from discussions leading to a defective and procedurally improper decision, intentionally and purposely preventing one Arbitration Panel member from presenting a position adverse to the pre-ordained decision the supposed 'Neutral' Rabbi was commissioned to reach without bias or prejudice or misconduct. As such, it is submitted the arbitration became a sham, and enforcement of the actions of the Arbitration Panel must be enjoined pending the appointment/substitution of a real Neutral to take the place of the supposed 'Neutral' Rabbi who will then determine the issues presented fairly and without bias.

3. Thus, this Affirmation is submitted in support of Plaintiffs' emergency application for a temporary restraining order, enjoining the transfer of ownership of certain life insurance policies from Rabbi Shlomo Zalman Kaufman, as escrow agent, to Kolel, which act is threatened to be done pursuant to an invalid temporary or interim decision from just two members of a Rabbinical Panel without consultation and meeting with the third member.

4. Rabbi Kaufman is the supposed "neutral" on a three-Rabbi Rabbinical Panel; but, however, based upon affidavits submitted with this application, it appears Rabbi Kaufman is _not_ 'neutral' and, in fact, we are informed told an intermediary he would issue a favorable decision to Kolel approximately ten days before any supposed interim decision was rendered. Moreover, as if that conduct were not enough to impugn the integrity of and taint the panel, to add insult to injury, it is clear, from Rabbi Kaufman's undeniable acts he intentionally and improperly "froze out" one of the Rabbis on the Panel from participating or deliberating in connection with the supposed interim decision, and engaged in his own pre-ordained "rush to judgment" before any relevant evidence [e.g., testimony, etc.] was presented aside from opening and rebuttal statements by counsel.

5. The facts in support of the relief sought herein are set forth in more detail in the accompanying Complaint, annexed hereto as Exhibit A, which is being filed simultaneously herewith and the facts set forth therein are incorporated herein by reference as well as the facts set forth in the accompanying affirmations and other documents submitted in support of the motion.

6. Also submitted herewith is a Memorandum of Law, setting forth the prongs for injunctive relief and explaining how they are fully met.

7. This emergency relief is required without advance notice to Kolel and the other defendants to do so would create as set forth under Rule 202.7(f), "any application for temporary injunctive relief, including but not limited to a motion for a stay or a temporary restraining order, shall contain, in addition to the other information required by this section, an affirmation demonstrating there will be *significant prejudice to the party seeking the restraining order by giving notice.*"

8. Here, if notice were provided, there is a substantial fear given the existence of the improper decision by the "Neutral" that the Policies would be transferred in violation of the law.

9. Under CPLR Section 7511(b)(1), the grounds for an application to vacate or modify an award exist when "(i) corruption, fraud or misconduct in procuring the award" exists **or** "(ii) partiality of an arbitrator appointed as a neutral exists" **or** "(iii) an arbitrator making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made" is in existence.

10. Here, each of the three grounds exist, notwithstanding that Section 7511 is drafted in the disjunctive; meaning, if any of the three grounds exists, the award must be vacated.

3

11. The affirmations and other evidence submitted in support of the relief sought by the Order to Show Cause (and the Complaint) amply demonstrate that each of the three conditions to vacate an award has been met.

12. The emergency nature of the matter, namely, the complete loss of asset of over $300 million in face value of Policies, which was absolutely and unconditionally sold to Plaintiff YLL pursuant to the terms of the Purchase and Sale Agreement between the plaintiffs and corporate defendant dated March 15, 2011, establishes the existence of significant prejudice precluding the need for notification to any of the defendants at this time. Given the manner in which the First Preliminary Decision, Ruling and Award was obtained, upon information and belief, if such notice were provided, it is reasonable or at the very least extremely plausible to presume Kolel would simply redouble its efforts to effectuate the transfer of ownership of Policies before the issuance of a TRO or preliminary injunction. If they were successful in achieving that result, the current status quo of the parties with regard to ownership of the Policies could be irretrievably changed; it is noted further though the Order to Show Cause contains an alternate relief, to wit, a re-transfer of the subject Policies to a yet to be appointed escrow agent in the event such a transfer has taken place, it is impossible to predict what steps or actions Kolel may take before any such re-transfer, which would indeed negatively impact upon the ultimate ownership of the Policies. For example, it is conceivable between the time of transfer to Kolel and the re-transfer to a newly appointed escrow agent, Kolel would, could or might otherwise encumber or sell the Policies to a third party. If that were to occur, even though irreparable already has been demonstrated, the parallel corollary to that would be irreparable harm.

13. Lastly, the Order to Show Cause provides for service of papers through email and overnight mail. Defendants Kolel, Rabbi Kaufman and Wilmington have counsel; defendants

4

Rabbi Grausz and Rabbi Bergman do not (however, no relief is sought against the latter two, as they are named in the Complaint solely as they appear to be necessary parties, inasmuch as they are non-neutral members of the Rabbinical Panel).

14. Further, I have been advised that under halachic and New York State law, the Preliminary First Decision is a nullity for several reasons, including, inter alia, a temporary decision or order provided in an arbitration in New York is not enforceable, and the First Preliminary Decision was not signed by *each* of the arbitrators.

15. In addition, it may have been appropriate to commence this action as a "special proceeding" under article 78 of the CPLR. Under that Article, section 7803, entitled "Questions raise," five "questions" are delineated that may be raised in a proceeding under Article 78, for example, "whether the body is proceeding in excess of jurisdiction," "or without jurisdiction," or "whether a determination was made in violation of lawful procedure," "was arbitrary and capricious and an abuse of discretion", or the "measure or mode of penalty or discipline imposed was an abuse of discretion" etc. Assuming, arguendo, this Court in its inherent power determines this Complaint should or could have been brought as an Article 78 proceeding, we hereby request permission to convert it to such a proceeding, while, in the interim, the Court issues the emergency temporary restraining order relief sought. It is respectfully submitted the Court may, indeed, have the inherent power to deem this matter so converted; and, if so, if appropriate, we seek such relief herein as well.

16. Accompanying the request for relief are the Affidavits of David Paneth, Rabbi Uziel Frankel, and Douglas Stein, Esq. The Complaint is annexed hereto as Exhibit A.

17. No prior request for the relief sought herein has been made to this or any Court.

WHEREFORE, it is respectfully requested that the relief sought herein and in the Order to Show Cause be granted in its entirety.

Dated: New York, New York
April 12, 2012

_____
STEPHEN R. STERN